James E. ROSS and Beulah M. Ross, Appellants–Plaintiffs,

v.

Larry D. OLSON, M.D. and John B. Chambers, M.D., Appellees–Defendants.

No. 03A05–0402–CV–120.

Court of Appeals of Indiana.

April 20, 2005.

Scott A. Benkie, Douglas A. Crawford, Benkie & Crawford, Indianapolis, IN, Attorneys for Appellants.

Edward J. Liptak, Jeremy M. Dilts, Carson Boxberger LLP, Bloomington, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Plaintiffs James E. Ross ("Ross") and Beulah M. Ross (collectively, "the Rosses") appeal a judgment in favor of Appellees–Defendants Larry D. Olson, M.D. ("Dr. Olson") and John B. Chambers, M.D. ("Dr. Chambers"), upon the Rosses' medical malpractice claim. We affirm.

### Issues

The Rosses present three issues for review:

I. Whether the trial court should have instructed the jury on the doctrine of res ipsa loquitur;

II. Whether the trial court erroneously excluded testimony as to the definition of the term "iatrogenic injury;" and

III. Whether the trial court erroneously excluded Plaintiff's Exhibit 13.

### Facts and Procedural History

On June 29, 1999, Dr. Olson, assisted by Dr. Chambers, performed bilateral knee replacement surgery on Ross. During the surgery, an osteotome (surgical chisel) partially severed Ross's left popliteal artery. Frederick Shedd, M.D. ("Dr. Shedd") surgically reconstructed the artery, which he estimated was "90% severed." (App.12.) Dr. Shedd composed an operative report indicating that the injury was "iatrogenic." (App.146.)

On June 18, 2001, the Rosses filed their proposed complaint against Drs. Olson and Chambers with the Indiana Department of Insurance. On July 22, 2003, the Medical Review Panel issued an opinion, unanimously opining that Drs. Olson and Chambers did not violate the applicable standard of care.

The case proceeded to trial on January 27, 2004. On January 30, 2004, the jury found in favor of Drs. Olson and Chambers, and the trial court entered judgment accordingly. The Rosses now appeal.

### Discussion and Decision

#### I. Res Ipsa Loquitur

The Rosses contend that the doctrine of res ipsa loquitur applies to their

case, and that the trial court should have instructed the jury accordingly. The doctrine of res ipsa loquitur is designed to allow an inference of negligence to be drawn when evidence of causation is lacking. *K–Mart v. Gipson,* 563 N.E.2d 667, 671 (Ind.Ct.App.1990). The doctrine may be applied when the plaintiff establishes that the injuring instrumentality was within the exclusive management and control of the defendant and the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. *Id.* at 669.

Medical malpractice actions are similar to other negligence actions, and generally, the fact that an injury occurred will not give rise to a presumption of negligence. *Narducci v. Tedrow,* 736 N.E.2d 1288, 1292 (Ind.Ct.App.2000). The plaintiff in a medical malpractice action must prove that the defendant owed him a duty of care, and breached that duty, proximately causing injury to the plaintiff. *Id.* The physician must exercise the degree of skill and care ordinarily possessed and exercised by a reasonably skillful and careful practitioner under the same or similar circumstances. *Id.* To establish the applicable standard of care and to show a breach of that standard, a plaintiff must generally offer expert testimony. *Id.*

Medicine is not an exact science; thus, an inference of negligence will not arise merely because there is a bad result without proof of a negligent act. *Id.* The doctrine of res ipsa loquitur, meaning "the thing speaks for itself," is an exception to the general rule that the mere fact of injury will not create an inference of negligence. *Id.* "The doctrine may be invoked in medical malpractice actions when a layman is able to say that as a matter of common knowledge the consequences of the professional treatment are not those which ordinarily result if due care is exer-

cised[.]" *Kranda v. Houser–Norborg Medical Corp.,* 419 N.E.2d 1024, 1042 (Ind. Ct.App.1981).

In *Wright v. Carter,* 622 N.E.2d 170 (Ind.1993), our supreme court explained the rationale underlying the res ipsa loquitur doctrine:

Due to the complexity of the issues surrounding diagnosis and treatment, Indiana recognizes a rule by which the parties introduce the opinion of medical experts about the standard of care customary under circumstances similar to the case at issue. Expert testimony, however, is not always a prerequisite to surviving a defendant's motion for summary judgment. As we noted in *Funk v. Bonham* (1932), 204 Ind. 170, 183 N.E. 312, there are some situations in which a physician defendant's allegedly negligent act or omission is so obvious as to allow plaintiffs to rely on the doctrine of res ipsa loquitur. Juries do not need an expert to help them conclude, say, that it is malpractice to operate by mistake on the wrong limb. Sometimes, the undisputed facts themselves create an inference of negligence such that the judge cannot say that the defendant must win as a matter of law, the contrary opinion of the medical review panel notwithstanding. Cases where expert opinion evidence is not necessary typically involve the failure of the operating physician to remove some surgical implement or other foreign object from the patient's body.

622 N.E.2d at 171–72. As subsequently explained by a separate panel of this Court in *Boston v. GYN, Ltd.,* 785 N.E.2d 1187, (Ind.Ct.App.2003), *trans. denied:*

Application of this exception [common knowledge or res ipsa loquitur] is limited to situations in which the physician's conduct is so obviously substandard that

one need not possess medical expertise in order to recognize the breach of the applicable standard of care.... For instance, expert testimony is not required in cases involving a physician's failure to remove surgical implements or foreign objects from the patient's body. The rationale underlying these cases is that the facts themselves are sufficient to raise an inference of negligence without expert testimony.

785 N.E.2d at 1191 (internal citations omitted.) Whether the doctrine applies to a particular negligence case is a mixed question of law and fact. *Gold v. Ishak*, 720 N.E.2d 1175, 1181 (Ind.Ct.App.1999), *trans. denied.* The question of law is whether the plaintiff's evidence included all the underlying elements of res ipsa loquitur. *Id.* The plaintiff may show, by common sense or expert testimony, that the injury was one that would not ordinarily occur in the absence of proper care on the part of those controlling the instrumentality. *Id.* When the plaintiff has met this burden, the doctrine of res ipsa loquitur operates to permit an inference of negligence based upon circumstantial evidence. *Widmeyer v. Faulk*, 612 N.E.2d 1119 (Ind.Ct.App.1993).

The circumstances surrounding Ross's surgery are unlike those in which our appellate courts have found that "the act speaks for itself." *See, e.g., Gold*, 720 N.E.2d at 1175 (patient's oxygen mask caught fire); *Klinger v. Caylor*, 148 Ind. App. 508, 267 N.E.2d 848 (1971) (surgical padding left in intestinal tract). Moreover, there is no dearth of causation testimony. The expert witnesses were in agreement as to the cause of Ross's injury, i.e., a surgical chisel severed his artery. They disagreed concerning the exercise of due care. The Rosses' expert opined that Drs. Olson and Chambers negligently failed to protect Ross's artery during surgery by using a retractor or taking other preventative measures. The physicians' experts opined that popliteal artery injury was a known complication of surgery, albeit rare, which could result even if the surgeon exercised due care. From the expert testimony presented, the jury could have drawn an inference that the defendant physicians were negligent or could have drawn a contrary conclusion that the physicians used the degree of care and skill ordinarily exercised by a reasonable practitioner under the same or similar circumstances. We cannot conclude, as a matter of law, that popliteal artery injury would not have occurred but for negligence.

The Rosses were not entitled to an instruction designed to create an evidentiary presumption of negligence from circumstantial evidence, because there was direct evidence of causation. Accordingly, the trial court did not abuse its discretion by refusing the proffered res ipsa loquitur instruction.

## II. Testimony to Define "Iatrogenic Injury"

Next, the Rosses claim that the trial court erroneously restricted the testimony of their expert witness, Dr. Bryant Bloss ("Dr. Bloss"), concerning the term "iatrogenic." We review evidentiary rulings of the trial court for an abuse of discretion. *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d 360, 365 (Ind.Ct.App. 2002), *trans. denied.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Dorsey v. State*, 802 N.E.2d 991, 993 (Ind. Ct.App.2004).

Dr. Shedd, who used the phrase "iatrogenic injury" in his surgical report, testified that he understood the term "iatrogenic" to mean "doctor caused as opposed to being hit by a car or shot with a bullet." (App.16.) He denied that he intended to

imply negligence or malpractice by utilizing the term. Dr. Shedd also read into evidence the definition of "iatrogenic" appearing in Tabor's Encyclopedic Medical Dictionary, as follows:

> Iatrogenic disorder, any adverse medical, physical condition induced in a patient by effects of treatment by a physician or surgeon. Term implies that such effects could have been avoided by proper and judicious care on the part of the physician, surgeon or dentist.

(App.17.) Thereafter, during the direct examination of Dr. Bloss, the Rosses attempted to determine whether or not Dr. Bloss recognized the term "iatrogenic" and whether he recognized Tabor's Encyclopedia Medical Dictionary as authoritative. The physicians objected that "this line of questioning" was irrelevant because Dr. Shedd, rather than Dr. Bloss, utilized the term and thus only Dr. Shedd could explain what he meant by using the term. The trial court sustained the objection.

Indiana Evidence Rule 103(a) provides in pertinent part as follows:

> (a) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . .
>
> (2) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked.

The Rosses made no offer of proof. However, they assert that they did not waive their allegation of error, because the substance of the excluded evidence was apparent to the trial court. Assuming, from the questions propounded and their context, that Dr. Bloss would accept the medical dictionary definition of "iatrogenic," including the implication of lack of due care, the Rosses were nevertheless not substantially prejudiced by the exclusion of Dr. Bloss's answer. The jury had already heard the definition of "iatrogenic" as it appeared in Tabor's Encyclopedia Medical Dictionary. Moreover, inasmuch as Dr. Shedd composed the surgical report at issue, which incorporated the term "iatrogenic," it is Dr. Shedd's common understanding of the term "iatrogenic," rather than Dr. Bloss's common understanding of the term, that is relevant. The Rosses have demonstrated no abuse of discretion by the trial court in its evidentiary ruling.

### III. Exclusion of Exhibit

■ At trial, the Rosses tendered proposed Exhibit 13, an advertising brochure created by Innomed, a surgical instrument manufacturer. In part, the brochure provides that an "S" knee retractor "helps protect the collateral ligaments and popliteal structures while providing excellent visualization within the knee joint." (App. 149.) A redacted version of Exhibit 13 was admitted into evidence as Exhibit 19. The jury was permitted to view the pictorial portions of the brochure, but the text was excluded as hearsay. The Rosses contend that the brochure text was admissible pursuant to Indiana Evidence Rule 801(d)(2)(B), and that its exclusion was an abuse of discretion.

Generally, hearsay is not admissible. Ind. Evid. Rule 802. However, Ind. Evid. Rule 801(d)(2)(B) provides that a statement is not hearsay if the statement is offered against a party and is a statement of which the party has manifested an adoption or belief in its truth. Dr. Olson acknowledged that retractors sometimes protect vascular structures and increase visualization. However, he testified that he had not used, and was not familiar with, the "S" and "Z" retractors depicted in proposed Exhibit 13. Inasmuch as Dr. Olson disavowed personal knowledge of

the particular retractors depicted, his testimony could not support a conclusion by the trial court that Dr. Olson adopted the advertising claim at issue, and that the language of proposed Exhibit 13 was thus a statement by a party-opponent. Again, the Rosses have demonstrated no abuse of discretion in an evidentiary ruling by the trial court.

## Conclusion

The doctrine of res ipsa loquitur is inapplicable; thus, the trial court properly refused the Rosses' res ipsa loquitur instruction. Moreover, the trial court's evidentiary rulings were within its discretion.

Affirmed.

SULLIVAN, J., and MATHIAS, J., concur.