

FILED

Jan 15 2016, 8:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Michael E. Simmons
William D. Beyers
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana

Andrea Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Clay A. Edwards
Andrew D. Pellino
O'Bryan, Brown & Toner, PLLC
Louisville, Kentucky

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Debra R. Sorrells, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Karen Reid-Renner, M.D., <br> *Appellee-Defendant* | January 15, 2016 <br><br> Court of Appeals Case No. <br> 53A01-1506-CT-534 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Dena Benham Martin, Special Judge <br><br> Trial Court Cause No. <br> 53C08-1202-CT-247 |

**Crone, Judge.**

## Case Summary

[1] Debra R. Sorrells filed a medical malpractice complaint against Karen Reid-Renner, M.D. ("Dr. Reid-Renner"), alleging that Dr. Reid-Renner failed to

communicate to her the results of a blood test which were indicative of her early-stage leukemia. Sorrells claimed that this resulted in a delay in diagnosis which, in turn, caused her injury and damages. Sorrells submitted her claim to a medical review panel as required by Indiana law. The panel opined that Dr. Reid-Renner indeed breached the applicable standard of care. However, the panel also opined that such breach was not a causative factor in any resultant injury or damages. Dr. Reid-Renner moved for summary judgment based upon the panel's opinion as to lack of causation. Sorrells responded by coming forth with expert testimony to rebut the panel's opinion. Following a hearing, the trial court entered summary judgment in favor of Dr. Reid-Renner. Concluding that Sorrells met her burden to establish that a genuine issue of material fact remains for trial, we reverse.

## Facts and Procedural History

The facts most favorable to Sorrells as the nonmoving party indicate that Dr. Reid-Renner is a family medicine physician practicing in Bloomington. On October 1, 2008, Sorrells was treated as a new patient by Dr. Reid-Renner. During that visit, Dr. Reid-Renner drew blood from Sorrells to send for testing. Results of the blood test showed that Sorrells had an elevated white blood cell count of 14.8. These results were never communicated to Sorrells, and Dr. Reid-Renner did not monitor Sorrells with any concerns for cancer. Sorrells saw Dr. Reid-Renner on one occasion during the following month.

More than a year later, on November 22, 2009, Sorrells went to see another physician. A blood test revealed that Sorrells's white blood cell count was

highly elevated to a level of 36. That physician referred Sorrells to oncologist Mark Dayton, Ph.D., M.D. ("Dr. Dayton"). Due to the urgency of her medical presentation, Dr. Dayton ordered a bone marrow biopsy the next day and diagnosed Sorrells with mantel cell lymphoma, a very serious form of cancer. Dr. Dayton told Sorrells and her family members that she had six to eight weeks to live. Believing that she had been suffering from an undiagnosed serious form of cancer for more than a year, and based upon the recommendation of Dr. Dayton, Sorrells immediately began R-CHOP chemotherapy along with Rituxan immunotherapy. Because she was starting R-CHOP, Sorrells had a port placed in her chest to receive the chemotherapy, and she proceeded with the aggressive treatment plan. Dr. Dayton eventually received pathology reports that revealed that Sorrells was suffering from lymphoproliferative disorder, a low-grade lymphoma and much less serious form of cancer.

[4] Sorrells filed a proposed complaint against Dr. Reid-Renner with the Indiana Department of Insurance in September 2009. In May 2013, Sorrells filed a medical malpractice claim against Dr. Reid-Renner in Monroe Circuit Court. Specifically, Sorrells claimed that Dr. Reid-Renner's failure to communicate to her the results of the initial blood test resulted in a thirteen-month delay in diagnosis which caused her to undergo additional treatments and procedures which would not have been necessary had her condition been properly diagnosed in 2008. Sorrells asserted that Dr. Reid-Renner's negligence caused

her permanent injuries and damages including but not limited to lost time for end-of-life planning and emotional distress.

[5] Sorrells's claim was submitted to a medical review panel. In June 2013, the panel unanimously found in favor of Sorrells as to liability but against Sorrells as to causation. Specifically, the panel's opinion reads, "the evidence supports the conclusion that the Defendant, Karen Reid-Renner, M.D., failed to comply with the appropriate standard of care as charged in the complaint; however, the conduct complained of was not a factor of the resultant damages." Appellant's App. at 32.

[6] Dr. Reid-Renner filed a motion for summary judgment in September 2014, designating, among other things, the medical review panel's opinion and the medical records of Dr. Dayton.[1] Sorrells filed a motion for enlargement of time to respond to the summary judgment motion so that she could depose Dr. Dayton. The trial court granted the motion for enlargement of time, and Dr. Dayton was subsequently deposed. Thereafter, Sorrells responded to Dr. Reid-Renner's summary judgment motion by designating excerpts from Dr. Dayton's deposition testimony. Dr. Reid-Renner replied by also designating excerpts from Dr. Dayton's deposition testimony.

---

[1] The record indicates that Dr. Reid-Renner previously filed a motion for summary judgment on June 21, 2013. That motion was denied by the trial court on August 1, 2013.

[7] In his deposition, Dr. Dayton stated that if Sorrells had been appropriately monitored and tested early on, before he ever saw her, he would have had "a much better idea of what her disease process was and [he] likely would not have started chemotherapy with the urgency that [he] did." *Id*. at 183. Dr. Dayton testified that he "would probably have treated her with Rituxan alone and not included chemotherapy." *Id*. at 184. Moreover, if Sorrells had been treated with Rituxan alone, "[s]he probably would not have had a port placed." *Id*. at 187. Further, if Sorrells had never started R-CHOP, she would not have needed two full years of Rituxan immunotherapy as maintenance following the chemotherapy. *Id*. at 125. Rather, she likely would have received a regimen of Rituxan alone once per week for four weeks with only the potential of needing Rituxan again at some point in the future. On cross-examination, Dr. Dayton conceded that any alleged delay in obtaining a correct diagnosis of Sorrells's disease did not affect her prognosis or life expectancy. Appellee's App. at 102.

[8] The trial court held a hearing on the summary judgment motion on January 23, 2015. On January 29, 2015, the trial court granted summary judgment in favor of Dr. Reid-Renner and dismissed Sorrells's claim with prejudice. Sorrells filed a motion to correct error, which was denied on May 21, 2015. This appeal ensued.

## Discussion and Decision

[9] Our supreme court often reiterates the appellate standard of review in summary judgment cases:

We review a trial court's order granting summary judgment de novo. And we apply the same standard as the trial court: summary judgment is appropriate only where the moving party demonstrates there is no genuine issue of material fact and he is entitled to judgment as a matter of law. If the moving party carries his burden, the non-moving party must then demonstrate the existence of a genuine issue of material fact in order to survive summary judgment. Just as the trial court does, we resolve all questions and view all evidence in the light most favorable to the non-moving party, so as to not improperly deny him his day in court.

*Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1259 (Ind. 2014) (citations omitted).

[10]     More specifically, our supreme court recently described the "high bar" set for summary judgment motions in Indiana:

Even though Indiana Trial Rule 56 is nearly identical to Federal Rule of Civil Procedure 56, we have long recognized that Indiana's summary judgment procedure ... diverges from federal summary judgment practice. In particular, while federal practice permits the moving party to merely show that the party carrying the burden of proof *lacks* evidence on a necessary element, we impose a more onerous burden: to affirmatively negate an opponent's claim. Our choice to heighten the summary judgment burden has been criticized because it may let summary judgment be precluded by as little as a non-movant's mere designation of a self-serving affidavit.[2]

---

[2] We note that in *Perry v. Anonymous Physician*, 25 N.E.3d 103 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied* (2015), this Court observed that, unlike other plaintiffs, a medical malpractice plaintiff may not defeat summary judgment with merely a self-serving affidavit, and that *Hughley* cannot be read to eliminate the

That observation is accurate, but using it as the basis for criticism overlooks the policy behind that heightened standard. Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a blunt ... instrument, by which the non-prevailing party is prevented from having his day in court. We have therefore cautioned that summary judgment is not a summary trial, and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at trial. In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

*Hughley v. State*, 15 N.E.3d 1000, 1003-04 (Ind. 2014) (citations, parenthetical, and quotation marks omitted).

[11] We note that medical malpractice cases are rarely appropriate for disposal by summary judgment. *Allen v. Hinchman*, 20 N.E.3d 863, 869 (Ind. Ct. App. 2014), *trans. denied* (2015). To establish a prima facie case of medical malpractice, a plaintiff must demonstrate: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure to conform her conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Thomson v. St. Joseph Reg'l Med. Ctr.*, 26 N.E.3d 89, 93 (Ind. Ct. App. 2015). Indeed, the plaintiff must come forth with

requirement in medical malpractice cases "that a plaintiff, to defeat summary judgment for a health care provider when the medical review panel has determined there was no breach of the duty of care or that any breach was not the cause of a plaintiff's injury, must provide expert opinion evidence." *Id*. at 107. Although this is a welcomed clarification regarding medical malpractice cases, it does not alter our heightened summary judgment standard and the policy underlying that standard as eloquently explained by the *Hughley* court.

expert medical testimony establishing: (1) the applicable standard of care required by Indiana law; (2) how the defendant doctor breached that standard of care; and (3) that the defendant doctor's negligence in doing so was the proximate cause of the injuries complained of. *Allen*, 20 N.E.3d at 870.

[12] Before commencing a medical malpractice action, a plaintiff must present a proposed complaint to a medical review panel. Ind. Code § 34-18-8-4. "When the medical review panel opines that the plaintiff has failed to satisfy any one of the elements of his prima facie case, the plaintiff must then come forward with expert medical testimony to refute the panel's opinion in order to survive summary judgment." *Allen*, 20 N.E.3d at 870. Where, as here, a medical review panel opines as to lack of causation by the physician, the burden shifts to the patient-plaintiff to produce expert testimony to rebut that opinion.[3] *Hassan v. Begley*, 836 N.E.2d 303, 307 (Ind. Ct. App. 2005).

[13] Under Indiana law, the evidentiary standard required to establish the fact of causation is by a preponderance of the evidence. *Siner v. Kindred Hosp. Ltd. P'ship*, 33 N.E.3d 377, 383 (Ind. Ct. App. 2015), *trans. pending*. "Expert opinions offered with reasonable medical certainty (in terms of their scientific/methodological reliability) which opine that a given injury was 'probable' or 'more likely than not' caused by defendant's actions, fulfill the plaintiff's burden to meet the preponderance standard, and may support a

---

[3] The only issue facing this Court is whether there is a genuine issue of material fact as to causation.

verdict standing alone." *Id.* "Admissible medical expert testimony must only be more conclusive than 'possibility' when it stands alone as proof of proximate causation." *Id*. (citation omitted). Further, to withstand a motion for summary judgment, medical expert testimony regarding proximate causation need only create a genuine issue of material fact for trial. *Thomson*, 26 N.E.3d at 96.

[14] We conclude that Sorrells has met her burden to survive summary judgment on the issue of causation. Dr. Dayton testified that if Sorrells had been appropriately monitored and tested early on, he would have had "a much better idea of what her disease process was and [he] likely would not have started chemotherapy with the urgency that [he] did." Appellant's App. at 183. Dr. Dayton indicated that he "would probably have treated her with Rituxan alone and not included chemotherapy." *Id*. at 184. Also, if Sorrells had been treated with Rituxan alone, "[s]he probably would not have had a port placed." *Id*. at 187. Further, if Sorrells had never started R-CHOP, she would not have needed two full years of Rituxan immunotherapy as maintenance following the chemotherapy. *Id*. at 125. Instead, she likely would have received a much shorter regimen of Rituxan alone with only the potential of needing Rituxan again at some point in the future.

[15] This testimony is sufficient to rebut the medical review panel's opinion as to causation, in that Dr. Dayton's testimony creates a genuine issue of material fact regarding whether Dr. Reid-Renner's negligence caused Sorrells's alleged injuries and damages, including unnecessary medical treatments and

procedures, as well the accompanying emotional distress caused by the delayed diagnosis.[4] While we acknowledge Dr. Reid-Renner's assertion that there are additional excerpts of Dr. Dayton's deposition that may call into question the causal connection between the thirteen-month delay in diagnosis and the alleged unnecessary medical treatments that followed, we remind Dr. Reid-Renner that we must resolve all questions in favor of Sorrells as the nonmoving party.

[16] Moreover, we disagree with Dr. Reid-Renner's implication that the only significant inquiry is whether the delay in diagnosis affected Sorrells's ultimate prognosis or life expectancy. It is undisputed that it did not. However, merely because the delayed diagnosis did not exacerbate Sorrells's disease, that is not to say that it was not the proximate cause of some injury or damages to her. After reviewing the evidence designated by both parties, we are left with far more questions than answers on the issue of causation. This is not a case where only legal issues exist; rather, there are unique facts and circumstances that a jury should be permitted to weigh and consider.

---

[4] Although neither party directly addresses it, we observe that Sorrells's negligent infliction of emotional distress claim appears to be based upon a direct impact theory, in which she seeks to recover for emotional trauma sustained as the result of a direct impact, that is, unnecessary medical procedures performed due to the delayed diagnosis. *See Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011) (explaining that the modified impact rule arises when the defendant owes a legal duty to the plaintiff or a third-party and the direct impact to the plaintiff is proximately caused by the defendant's breach of that duty); *but see Keim v. Potter*, 783 N.E.2d 731, 735 (Ind. Ct. App. 2003) (plaintiff permitted to maintain claim for negligent infliction of emotional distress against doctor who misdiagnosed plaintiff with hepatitis C even though plaintiff did not suffer physical impact).

In sum, we conclude that Dr. Dayton's expert testimony, when viewed in the light most favorable to Sorrells, is sufficient to demonstrate a genuine issue of material fact as to whether Dr. Reid-Renner's alleged negligence was the proximate cause of the injuries and damages complained of. Those injuries and damages include additional aggressive and expensive medical treatments and procedures that would have been unnecessary had Dr. Reid-Renner complied with the applicable standard of care, as well as the emotional distress suffered as a result of the chain of events that transpired. Based upon the record before us, we consciously choose to err on the side of letting this case proceed to trial on the merits, rather than risk short-circuiting a meritorious claim. *See Hughley*, 15 N.E.3d at 1004. The trial court's entry of summary judgment is reversed.[5]

Reversed.

Vaidik, C.J., and Bailey, J. concur.

---

[5] Because we reverse the trial court's entry of summary judgment, we need not address Sorrells's additional claim that the trial court considered improper hearsay evidence designated by Dr. Reid-Renner.