NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 14, 2018[*]
Decided June 14, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-3383

| | |
|---|---|
| DANIEL LYNN BROWN, JR., *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:15-cv-0224-TWP-DML |
| UNITED STATES OF AMERICA, *Defendant-Appellee*. | Tanya Walton Pratt, *Judge*. |

**O R D E R**

Daniel Brown, formerly an inmate at the Federal Correctional Institution in Terre Haute, sues the United States for the allegedly negligent medical care he received after fracturing his leg during a prison soccer game. The district judge entered summary judgment for the government, concluding that the prison medical staff reasonably relied on the advice of orthopedic specialists. Because Brown does not raise a material

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

factual dispute about whether the prison staff operated within the standard of care, we affirm the judgment.

Brown fractured his right tibia and fibia when he ran into another inmate during a soccer game on August 19, 2012. Because Brown's injuries were severe, clinical director Dr. William Wilson sent Brown to an outside facility, Union Hospital, for specialized orthopedic care. While Brown was under the care of hospital physicians, Dr. Wilson and the prison medical staff had no decision-making authority over Brown's treatment, although they did receive updates on his condition.

Three days after being admitted, Brown underwent surgery on his right tibia and spent eleven days in the hospital recovering. On the sixth day, he reported more pain than his physicians felt was appropriate, so he was scheduled for an orthopedic evaluation to detect possible complications. The attending orthopedist performed some tests, but he found no abnormalities. Still in pain but without a diagnosis, Brown was discharged from Union Hospital and returned to the prison on August 31, 2012. What the hospital staff did not realize is that Brown was suffering from compartment syndrome, an orthopedic emergency caused by pressure buildup in the muscle. Brown's expert witness, Dr. Eric Orenstein, explained that compartment syndrome must be diagnosed within 72 hours of the injury; otherwise it develops into a Volkmann's contracture—a condition that can cause permanent nerve damage, muscle damage, and deformities.

When he arrived back at the prison, Brown was prescribed pain medication and antibiotics in accordance with his discharge instructions. The medication was supposed to be temporary, but his pain persisted, so Dr. Wilson prescribed anti-inflammatory drugs for pain and nerve pain medication for neuropathic discomfort. Throughout Brown's treatment Dr. Wilson consulted with orthopedist Dr. Gary Ulrich, an outside physician who examined Brown on-site. Based on Dr. Ulrich's advice, Dr. Wilson ordered a follow-up surgery, multiple x-rays, an electromyography, a bone stimulator (to assist with fracture healing), and neurological consultations with outside providers.

Meanwhile Brown continued to report pain in his leg and developed blisters on his toe. The blisters, Dr. Orenstein explained, resulted from Brown's toes curling into a claw-like shape because of a Volkmann's contracture. Brown reported that the pain in his foot was so extreme that he removed his own toenails to relieve pressure after medical staff informed him that he would have to wait for treatment due to scheduling constraints. All the while, medical staff modified Brown's medications as needed, took

multiple x-rays (all normal), performed weekly wound dressings on his blistered toe, and gave him a surgical shoe to protect his foot.

Brown's last reported treatment was a third surgery on July 30, 2014, to remove scar tissue near the damaged tendons in his leg. Dr. Ulrich performed the surgery based on the recommendation of a neurosurgeon, who found that Brown had "substantially recovered" from his peroneal nerve injury but showed signs of injury to his tibial nerve.

Brown sued the government under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, alleging that the United States was negligent in providing treatment for his fractured leg. Brown filed a motion to recruit counsel, but the district judge denied it because Brown was not indigent; he testified that he had approximately $8,900 in his trust fund account. Proceeding pro se, Brown then used most of his money to hire Dr. Orenstein as his expert witness. Dr. Orenstein appeared for a deposition, with Brown appearing by video, and testified that the standard of care had been breached when Brown was diagnosed improperly at the hospital and when he was provided inadequate medical care, based on the improper diagnosis, upon his return to the prison. Dr. Orenstein also stated, however, that the compartment syndrome should have been diagnosed by the treating orthopedist at the hospital, and that Terre Haute physicians had acted within the standard of care when they sought out and relied upon the specialists' opinions in treating Brown. The government's expert witness also reviewed the medical records, and concluded that Terre Haute medical staff had acted within the standard of care while treating Brown's injury.

The government filed a motion for summary judgment, which the district judge granted. Applying Indiana negligence law, *see Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008), the district judge reviewed the undisputed facts and concluded that Brown could not establish that the medical staff provided inappropriate treatment. Both expert witnesses agreed, the judge emphasized, that Terre Haute staff had operated within the standard of care and had reasonably relied on the advice of specialists to treat and diagnose Brown. Because both experts testified that compartment syndrome must be diagnosed within a few days after surgery, the judge also agreed with the government that the prison staff was not responsible for Brown's misdiagnosis and resulting injuries. Brown filed a motion to reconsider, but it was denied.

On appeal Brown challenges the judge's conclusion—and his own expert witness's conclusion—that the doctors at Terre Haute were not responsible for diagnosing his compartment syndrome. He argues that Dr. Wilson was in contact with

the hospital staff, and therefore should have intervened in the treatment. Under Indiana medical malpractice law, a plaintiff must establish three elements: (1) the physician owed a duty to the plaintiff, (2) the physician breached that duty, and (3) the breach proximately caused the plaintiff's injuries. *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 910 (Ind. 2009). But Brown has not presented any evidence that Dr. Wilson had the authority or the training, let alone a duty, to diagnose Brown with compartment syndrome while Brown was hospitalized. Dr. Wilson attested that, once Brown was transferred to the hospital, he and the rest of the prison staff did not have authority to make decisions about Brown's treatment. And the experts said that compartment syndrome had to be diagnosed within the first 72 hours, while Brown was hospitalized and outside of Dr. Wilson's care.

Brown's own characterization of Dr. Wilson's role as an active decision maker does not, on its own, create a factual dispute because it is speculative. *See Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015); *Taylor v. Community Hospitals of Ind., Inc.*, 949 N.E.2d 361, 364 (Ind. Ct. App. 2011). Without evidence to contradict Dr. Wilson and the experts, Brown fails to raise a genuine issue of material fact about whether the prison medical staff was negligent for failing to diagnose his condition.

Brown also contends that, even if it was not the prison medical staff's job to diagnose him, they were responsible for—and negligently administered—his medical care after he returned to the prison. The prison owed Brown a duty of "safekeeping" and "care" that encompassed appropriate medical treatment for his fractured leg. *See* 18 U.S.C. § 4042(a)(2); 28 U.S.C. § 2674. There is no doubt that Brown was injured, but Brown has adduced no facts that would permit a reasonable jury to conclude that the injury was caused by the prison medical staff's breach of duty. Indiana malpractice cases generally require expert testimony to establish a breach of the applicable standard of care. *Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1201 (Ind. 2008). Here, both expert witnesses concluded that medical staff acted within the standard of care, so Brown is left without crucial evidence. *See Collins v. Al-Shami*, 851 F.3d 727, 733–34 (7th Cir. 2016).

Further, even though the diagnosis was wrong, the record reflects timely and increasingly aggressive attempts to relieve Brown's symptoms—including orders for testing and referrals to outside specialists—that belies a finding of negligence or medical malpractice. *See Ross v. Olson*, 825 N.E.2d 890, 893 (Ind. Ct. App. 2005) ("Because medicine is an inexact science, an inference of negligence will not arise simply because there is a bad result without proof of some negligent act."); *Schultheis v. Franke*, 658 N.E.2d 932, 939 (Ind. Ct. App. 1995) (finding that proof a diagnosis is wrong

or that cure is not effective does not support medical-malpractice claim). Brown asserts that it took too long for his third surgery to take place, but the record reveals no lack of urgency on behalf of the medical providers who were treating his symptoms aggressively in the meantime.

We recognize that Brown fell victim to a gruesome syndrome and endured intolerable pain for years as his seemingly avoidable condition progressed into permanent nerve damage. But, on this record, the prison medical providers were not the source of his misery. Indeed, they treated Brown's condition "as best they could," as Dr. Orenstein explained, based on their reasonable reliance on an expert's diagnosis. Their efforts did not breach any duty owed to Brown.

As for Brown's motion to recruit counsel, it was properly denied. Brown says the denial prejudiced him because, among other things, he could appear for his expert's deposition only by videoconference. His assessment is not supported by the record. Appearing by videoconference, on its own, does not demonstrate prejudice. *Cf. Perotti v. Quinones*, 790 F.3d 712 (7th Cir. 2015) (finding no prejudice where plaintiff appeared for his civil jury trial via videoconferencing). And it is not clear how Brown's physical presence could have altered the questioning or Dr. Orenstein's answers to his benefit. Brown could not have discussed Dr. Orenstein's answers with him, *see Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012), and Brown had the ability in real time to object to or seek clarification of any questions he deemed inappropriate. In any case, the discretion to recruit counsel is reserved for indigent defendants, and Brown, who testified that he had $8,900 in a trust fund account, was not indigent. *See* 28 U.S.C. § 1915(e)(1); *see also Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013). Brown explains that he later became indigent because he spent $7,200 to hire an expert witness, but he never filed another motion or notified the judge that his circumstances had changed. And, even if Brown became eligible, the judge would have had no obligation to reconsider the motion's denial. *See Pruitt v. Mote*, 503 F.3d 647, 656 (7th Cir. 2007).

We have considered Brown's other arguments, including that the district judge erroneously denied his post-judgment motion premised on unspecified "newly discovered evidence," and conclude that they lack merit.

AFFIRMED