

ATTORNEY FOR APPELLANTS

Jeffrey J. Stesiak
Pfeifer, Morgan & Stesiak
South Bend, Indiana

ATTORNEY FOR APPELLEES

Robert J. Palmer
May, Oberfell, Lorber
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cindy and Ron Glon,

*Appellants-Plaintiffs,*

v.

Memorial Hospital of South
Bend, Inc. and/or its Employees
and agents,

*Appellees-Defendants.*

September 14, 2018

Court of Appeals Case No.
18A-CT-49

Appeal from the St. Joseph
Superior Court, Mishawaka
Division

The Honorable Jenny Pitts Manier,
Judge

Trial Court Cause No.
71D05-1707-CT-000292

**Mathias, Judge.**

[1] The St. Joseph Superior Court entered summary judgment in favor of Memorial Hospital of South Bend, Inc. and/or its Employees and agents (collectively "the Hospital"), the defendants, against Cindy and Ron Glon (collectively "Glon"). Glon appeals and raises the following two issues for our review:

    I.    Whether the trial court erred when it concluded that the doctrine of *res ipsa loquitur* does not apply to the facts of this case; and,

II.     Whether genuine issues of material fact preclude the entry of summary judgment.

We affirm.

## Facts and Procedural History

On or about June 6, 2011, Glon underwent a cementless total hip replacement of her right hip at the Hospital. The Hospital administered a spinal epidural to Glon during the surgery, and she had no feeling or sensation from the waist down.

After surgery, Glon was moved to her hospital room where a nurse and patient care assistant rolled Glon onto her side to give them access to remove the epidural. As they did so, Glon heard three audible pops near her right knee. Appellant's App. p. 51. However, Glon's lower body was still numb from the effects of the epidural, and she did not experience any pain at the time she heard the popping sounds.

After the effects of the epidural wore off, Glon found she was in severe pain that would not subside. A subsequent x-ray revealed that Glon had a three-part displaced fracture of her right femur. There had been no visible fracture on the x-rays taken immediately after Glon's surgery. Therefore, Dr. Robert Clemency ("Dr. Clemency"), Glon's surgeon, later opined that the fracture occurred at some point after she was transferred to her hospital room for recovery. *Id.* at 53.

On May 18, 2012, Glon submitted a claim to the medical review panel as required by Indiana's Medical Malpractice Act, arguing that the Hospital breached the standard of care and that its negligence caused the fracture in her

right leg.[1] Almost five years later, in April 2017, the panel, which was composed of three orthopedic surgeons, unanimously agreed that the Hospital did not fail to meet the applicable standard of care. *See e.g.,* Appellant's App. p. 25 ("The evidence does not support the conclusion that the defendant, MEMORIAL HOSPITAL OF SOUTH BEND, INC., failed to meet the applicable standard of care as charged in the complaint.").

[7] On July 7, 2017, Glon filed a complaint against the Hospital in St. Joseph Superior Court. Glon alleged that her injuries were a result of negligent care rendered by the Hospital, and that but for this negligence, she would not have suffered the fracture to her femur. Glon also argued that the doctrine of *res ipsa loquitur* supported her claim.

[8] On August 10, 2017, the Hospital filed a motion for summary judgment. In support of its motion, the Hospital designated the opinion of the medical review panel and an affidavit from orthopedic surgeon Dr. Phillip H. Ireland, M.D. ("Dr. Ireland"), who had also served on Glon's medical review panel, which states in pertinent part:

> 6. According to the medical records, [Glon] had a three-part displaced fracture, spiral type, of her right femur following a cementless right hip replacement surgery. This is a "high impact" injury.

---

[1] Glon did not name Dr. Clemency as a party and did not allege that he breached the standard of care while performing the cementless hip replacement surgery.

7.     It is not physically possible that the act by the nurse and patient care assistant of turning [Glon] on her side caused the injury to the femur.

8.     I am aware [Glon] allege[s] the nurse and patient care assistant grabbed [Glon's] right leg and twisted it. Even if that allegation is true, it is not physically possible that such an act could cause the injury to [Glon's] femur.

9.     [Glon's] injury can occur for reasons other than negligence.

10.    The injury to [Glon's] femur is a recognized complication of a cementless hip replacement surgery. During the surgery, a hairline fracture can develop. The hairline fracture is not always seen in a post-operative x-ray.

11.    In my opinion, it is more likely than not that a hairline fracture led to the resulting injury in [Glon's] case.

12.    In my opinion, nothing the nurses did, or failed to do, led to the injury in [Glon's] case.

*Id.* at 28–29.

[9]    In his deposition, which was designated to the trial court, Dr. Ireland stated that a high impact injury meant "that [it] takes a lot of force to break the femur in that location and to break it in that style." *Id.* at 56. He clarified that this type of fracture is "not something that you or I would get by falling or even falling off a bicycle," and "it would take . . . high force of -- in this case, the broaches or the implantation of the hip inside that canal to cause that kind of fracture."

*Id*. at 57. Dr. Ireland agreed that a hairline fracture was not visible in the postoperative x-ray. *Id*. at 58. He explained that it is likely that the fracture was not visible on the postoperative x-ray because it was obscured by the metal implant. *Id*. at 59.

[10]   In response, Glon designated her own affidavit wherein she described hearing three pops while she was being rolled onto her side by the nursing staff after her surgery. She also designated an affidavit from Dr. Clemency, her surgeon, which stated in pertinent part that:

1.   [ . . . ] [A]ll matters and opinions stated herein are based on my personal knowledge, are made to a reasonable degree of medical probability, and are true and accurate to the best of my knowledge and belief.

***

3.   Based on the history given to me by [Glon], a physical examination, x-rays which were taken in the operating room after I performed a hip replacement, but prior to [Glon] being sent to recovery, and my personal knowledge, it is my opinion that the large three (3) part displaced fracture of [Glon's] right leg did not occur during her hip replacement surgery which I performed on June 6, 2011, but at some point after [Glon] was returned to her room and was being rolled over by the nursing staff.

*Id*. at 53.

[11]   A hearing was held on December 7, 2017, and the trial court took the matter under advisement. One week later, the trial court granted summary judgment in favor of the Hospital, and issued the following order:

Defendants' expert opined that "it is not physically possible that the act by the nurse and patient care assistant of turning [Glon] on her side caused the injury to her femur" and that even if the Plaintiffs' allegations as to how Defendants (mis)handled [Glon] are true, "it is not physically possible that such an act could cause the injury."

Plaintiffs' expert failed to counter this opinion. That is, Plaintiffs' expert failed either to assert that it is physically possible that the complained of conduct of Defendants caused or could have caused the injury to [Glon] or to identify some other act of negligence committed by Defendants that was a proximate cause of [Glon's] injuries.

Plaintiffs argue that the issue should be tried to a jury, that a jury might not believe the testimony of Defendants' expert that a hairline fracture occurred during the operation and the fact that there was no radiographic evidence of that fracture after the surgery was due to the fact that the fracture was hidden by the implant. While a jury might not believe this testimony, or believe that this proposition that a hairline fracture occurred during surgery was a necessary conclusion if Defendants' expert was to maintain that the conduct of Defendants could not have cause[d] the injury, we are still left with the fact that Plaintiffs have presented no expert testimony that asserts or from which it can be concluded that negligence on the part of Defendants was a cause of [Glon's] injuries. Plaintiffs argue that "common sense" supplies the causative connection. The Court agrees with Defendants that the cause of this injury in not a matter of common sense, but of medical expertise.

*Id.* at 8–9.[2]

Glon appeals the trial court's order granting summary judgment to the Hospital.[3]

## Standard of Review

When we review the entry of summary judgment, we apply the same standard as the trial court. *City of Lawrence Util. Serv. Bd. v. Curry*, 68 N.E.3d 581, 585 (Ind. 2017). Summary judgment is appropriate only when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). An issue is "genuine" if a trier of fact is required to resolve the truth of the matter; a fact is "material" if its resolution affects the outcome of the case. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "Just as the trial court does, we resolve all questions and view all evidence in the light most favorable to the non-moving party, so as to not improperly deny him his day in court." *Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1259 (Ind. 2014).

Summary judgment is a "blunt instrument" preventing the non-prevailing party from resolving its case at trial. *Hughley*, 15 N.E.3d at 1003. Because of this, our

---

[2] The original order contained scrivener's errors; therefore, the trial court issued an amended order *nunc pro tunc* to correct the order.

[3] We held oral argument in this appeal on August 16, 2018, at the Allen County Courthouse in Fort Wayne, Indiana. We extend our gratitude to the Allen County Bar Association and to Jeff Leffers, the Director of Court Operations for Allen Superior Courts, for their hospitality. We also commend counsel for the quality of their written and oral advocacy.

supreme court has cautioned that summary judgment "is not a summary trial" and courts on appeal should carefully "assess the trial court's decision to ensure [a party] was not improperly denied his [or her] day in court." *Id*. at 1003–04 (citations omitted).

## I. *Res Ipsa Loquitur*

[15]     Glon argues that the doctrine of *res ipsa loquitur* is applicable to her case and the Hospital's breach of the standard of care speaks for itself.

> The doctrine of *res ipsa loquitur* is a rule of evidence which allows an inference of negligence to be drawn from certain surrounding facts. The plaintiff's evidence must include the underlying elements of res ipsa loquitur, showing that: (1) the injuring instrumentality is under the management or exclusive control of the defendant or his servants and (2) the accident is such as in the ordinary course of things does not happen if those who have management of the injuring instrumentality use proper care.

*Thomson v. St. Joseph Reg'l Med. Ctr.*, 26 N.E.3d 89, 94 (Ind. Ct. App. 2015) (citation and quotation omitted). *See also Gary Community Sch. Corp. v. Lardydell*, 8 N.E.3d 241, 247 (Ind. Ct. App. 2014) (explaining that *res ipsa loquitur* "is a rule of evidence that permits an assumption that in some situations an occurrence is so unusual that, absent a reasonable justification or explanation, the person in control of the situation should be held responsible"), *trans. denied*. Expert opinion is not necessary to prove a negligence claim when the case fits within the *res ipsa loquitur* exception. *Thomson*, 26 N.E.3d at 94.

[16] To determine if the doctrine applies, the question is whether the incident more probably resulted from the defendant's negligence than from another cause. *Rector v. Oliver*, 809 N.E.2d 887, 890 (Ind. Ct. App. 2004), *trans. denied*. "The plaintiff may show, by common knowledge or expert testimony, that the injury is one that would not ordinarily occur in the absence of due care on the part of those controlling the instrumentality." *Tucker v. Harrison*, 973 N.E.2d 46, 56 (Ind. Ct. App. 2012), *trans. denied*.

> [T]here are some situations in which a physician defendant's allegedly negligent act or omission is so obvious as to allow plaintiffs to rely on the doctrine of res ipsa loquitur. Juries do not need an expert to help them conclude, say, that it is malpractice to operate by mistake on the wrong limb[.]

*Id.* (quoting *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind. 1993)). Examples of cases applying the doctrine include a patient's oxygen mask catching fire during surgery, *see Cleary v. Manning*, 884 N.E.2d 335, 339 (Ind. Ct. App. 2008); *Gold v. Ishak*, 720 N.E.2d 1175, 1184 (Ind. Ct. App. 1999), *trans. denied*; or foreign objects left in the body following surgery, *see Wright*, 622 N.E.2d at 172 (wire left in breast following biopsy).

[17] However, the doctrine does not apply when the injury that occurs is a known complication of surgery or a medical procedure that can occur even if a physician exercises due care. In *Ross v. Olson*, 825 N.E.2d 890 (Ind. Ct. App. 2005), *trans. denied*, during a bilateral knee replacement surgery, the surgical chisel partially severed the patient's left popliteal artery. A surgeon determined that the artery was 90% severed and surgically reconstructed it. The patient filed

a medical malpractice claim against the surgeons who performed the knee replacement surgery, and at trial, the patient requested a jury instruction on the doctrine of *res ipsa loquitur*. The trial court refused to give the instruction.

[18] On appeal, our court affirmed after observing that "there was no dearth of causation testimony" at trial. *Id*. at 894. The expert witnesses at trial disagreed whether the patient's surgeons exercised due care. The patient's expert opined that the surgeons should have taken measures during surgery to protect the patient's artery. The surgeons' experts testified that popliteal artery injury was a rare, but known, complication of knee replacement surgery which could result even if the surgeon exercised due care. Because there was direct evidence of causation from which "the jury could have drawn an inference that the defendant physicians were negligent or could have drawn a contrary conclusion that the physicians used the degree of care and skill ordinarily exercised by a reasonable practitioner under the same or similar circumstances," our court concluded that the patient was not entitled to the requested *res ipsa loquitur* instruction. *Id*.

[19] In this case, Glon argues the positioning and maneuvering of her leg post-surgery was within the exclusive control of the Hospital's nursing staff, and the Hospital does not dispute Glon's claim of exclusive control. Glon also argues that the

> designated evidence demonstrates that the accident is of the type that does not ordinarily happen if the hospital staff exercised proper care. A patient's bones do not usually break when a patient is positioned, unless the staff positioning the patient [do not] use the proper care.

Appellant's Br. at 10.

[20]     This is an attractive argument, but it ignores several things, first, the dispositive finding of the Panel. The Panel specifically found that, "The evidence does not support the conclusion that the defendant, MEMORIAL HOSPITAL OF SOUTH BEND, INC., failed to meet the applicable standard of care as charged in the complaint." Dr. Clemency's affidavit only spoke to when Glon's injury occurred, not to whether the Hospital violated its standard of care when Glon's femur suffered its displaced fractures.

[21]     In addition, in the Hospital's designated affidavit and deposition testimony of Dr. Ireland, he explained that the three-part displaced fracture of Glon's femur is a recognized complication of cementless hip replacement surgery. Appellant's App. p. 28. Dr. Ireland stated that this type of fracture occurs only when a person suffers a high impact. Specifically, in this case, the "high force of . . . the broaches or the implantation of the hip inside that canal to cause that kind of fracture." *Id.* at 57. Dr. Ireland also concluded that it is not physically possible that a nurse's act of rolling Glon over or grabbing Glon's right leg and twisting it caused the three-part displaced fracture of her right femur. *Id.* at 28.

[22]     Risks and complications associated with cementless hip replacement surgery are not commonly known to lay people. Expert testimony is required to establish the applicable standard of care, breach of that standard and proximate cause. Because the Hospital presented expert testimony that the fracture was a known complication of cementless hip replacement surgery which can occur

even if the Hospital exercised due care, we conclude that the doctrine of *res ipsa loquitur* cannot be applied in this case. *See e.g. Smith v. Dermatology Associations of Fort Wayne, P.C.*, 977 N.E.2d 1, 6 (Ind. Ct. App. 2012) (concluding that the trial court did not err when it refused to apply the doctrine of *res ipsa loquitur* because there was contrary evidence on each element of the doctrine); *Ross*, 825 N.E.2d at 894 (affirming the trial court's decision to refuse a *res ipsa loquitur* instruction because there was direct evidence of causation, i.e. that the injury was a known complication of surgery).

## II. Genuine Issue of Material Fact

[23] Next, we address Glon's argument that the trial court erred when it concluded that there were no genuine issues of material fact and the Hospital was entitled to judgment as a matter of law. To establish a *prima facie* case of medical malpractice, a plaintiff must demonstrate: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure to conform his or her conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Sorrells v. Reid-Renner*, 49 N.E.3d 647, 651 (Ind. Ct. App. 2016) (citing *Thomson*, 26 N.E.3d at 93). The plaintiff must present expert medical testimony establishing: (1) the applicable standard of care required by Indiana law; (2) how the defendant doctor breached that standard of care; and (3) that the defendant doctor's negligence in doing so was the proximate cause of the injuries complained of. *Id.* at 651.

[24] Before commencing a medical malpractice action in Indiana, all plaintiffs are required to present a proposed complaint to a medical review panel. Ind. Code

§ 34-18-8-4. "If the panel renders an opinion against the plaintiff, to survive summary judgment, the plaintiff must present expert medical testimony to rebut the panel's opinion." *Thomson*, 26 N.E.3d at 93. Expert opinions which conflict on ultimate issues necessarily defeat summary judgment. *Siner v. Kindred Hosp. Ltd. Partnership*, 51 N.E.3d 1184, 1190 (Ind. 2016) (citing *Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1200–01 (Ind. 2008)). Moreover, we acknowledge that

> a medical malpractice case based upon negligence is rarely appropriate for disposal by summary judgment, particularly when the critical issue is whether the defendant exercised the appropriate standard of care under the circumstances. This issue is generally inappropriate for resolution as a matter of law and is a question that should be reserved for the trier of fact.

*Smith*, 977 N.E.2d at 5 (quoting *Mills v. Berrios*, 851 N.E.2d 1066, 1070 (Ind. Ct. App. 2006)).

[25] In this case, Dr. Ireland and Dr. Clemency gave conflicting testimony, but only as to when the fracture occurred. Dr. Ireland believes that a hairline fracture resulted from the impact of implanting the hip appliance and the fracture was obscured on the x-ray by the metal implant. Dr. Clemency believes that the fracture occurred post-operatively because no fracture is visible on the post-operative x-ray. This might seem like an important issue of fact, until Dr. Clemency's affidavit is examined for what it does not say. Dr. Clemency's affidavit says only that the "large three (3) part displaced fracture of Mrs. Glon's right leg did not occur during her hip replacement surgery which I performed . . . but at some point after the patient was returned to her room and

was being rolled over by the nursing staff." Appellant's App. p. 53. The Hospital does not dispute these facts, and it does not need to dispute them to prevail on summary judgment.

[26] If Glon had sustained the large **displaced**, three-part fracture in the operating room, this could be a different case; but the fracture at issue occurred during her post-operative care. Dr. Clemency's affidavit is only a "not on my watch" claim. His affidavit provides no evidence that conflicts with the Panel's determination as to what the Hospital's post-operative standard of care was, and no evidence to conflict with the Panel's finding that the Hospital never breached that standard of care in its post-operative care of Glon.

[27] In addition, the Hospital designated evidence that the later fracture was actually caused by the impact of implanting the prosthetic hip. Specifically, Dr. Ireland testified that hairline fracturing is a known complication of the hip replacement surgery and that an actual hairline fracture in this case was likely obscured by the metal implant on the post-operative x-ray because the fracture is nondisplaced, i.e. it had not come apart. *Id.* at 59. Typically, nondisplaced factures "blow apart in the first few days as you start to rehabilitate people." *Id*. at 60. Dr. Ireland concluded that because Glon's fracture is the result of a "high impact" injury, it is not physically possible that the nursing staff caused the three-part displaced fracture by rolling Glon onto her side. *Id*. at 28. Instead, the hairline fracture, a recognized complication of the surgery, likely became displaced when Glon was rolled onto her side. *See id*.

[28] The Hospital met its burden as the summary judgment movant to affirmatively negate an element of Glon's claim, i.e. whether the Hospital breached the applicable standard of care and proximately caused Glon's injury. Because Glon failed to designate contrary evidence on the issues of breach and causation, there are no genuine issues of material fact requiring resolution by the trial court or a jury. For these reasons, we affirm the trial court's grant of summary judgment in the Hospital's favor.

## Conclusion

[29] The trial court was correct when it concluded that the doctrine of *res ipsa loquitur* is not applicable to the facts of this case. There is also no genuine issue of material fact on the issues of breach of the applicable standard of care and causation. For these reasons, we affirm the trial court's grant of summary judgment to the Hospital.

[30] Affirmed.

Najam, J., concurs.

Crone, J., dissents with opinion.

| | |
|---|---|
| Cindy and Ron Glon,<br><br>*Appellants-Plaintiffs,*<br><br>v.<br><br>Memorial Hospital of South Bend, Inc. and/or its Employees and agents,<br><br>*Appellees-Defendants.* | Court of Appeals Case No.<br>18A-CT-49 |

**Crone, Judge, dissenting.**

[31] I respectfully disagree with my colleagues' determinations that the doctrine of res ipsa loquitur is inapplicable and that no genuine issues of material fact exist as to breach and causation. Those determinations are predicated on the affidavit and deposition of Dr. Ireland, who opined that Mrs. Glon's displaced fracture "more likely than not resulted from a hairline fracture." Appellants' App. at 29 (Ireland aff. ¶ 11). He also averred that the type of fracture Mrs.

Glon had was a "high impact injury." *Id*. at 28 (Ireland aff. ¶ 6). Dr. Ireland testified in his deposition that he did not believe that such an injury could have been caused by the nursing staff and only could have resulted from the presence of a hairline fracture occurring during the surgery. *Id*. at 91 (Ireland depo. at 15). Dr. Clemency, who performed the surgery, submitted an affidavit which stated that "the large three (3) part displaced fracture of Mrs. Glon's right leg did not occur during her hip replacement surgery … but at some point after the patient was returned to her room and was being rolled over by the nursing staff." *Id*. at 53 (Clemency aff. ¶ 3). No one disputes that the displaced fracture occurred while the nursing staff was rolling Mrs. Glon over and that she heard three loud pops at that time.

[32] The real dispute is as to the efficient cause of the displaced fracture at that time. Dr. Ireland's opinion is premised upon the assumption that such an injury could not have occurred without the presence of a hairline fracture occurring during the surgery. Without the presence of a hairline fracture, he has no explanation for the injury. Even the trial court acknowledges that a jury is free to disregard Dr. Ireland's testimony. I believe that a material issue of fact exists as to whether a hairline fracture was present post-surgery. We must remember that at this stage of the proceedings all inferences must be indulged in favor of the nonmoving party. *Kottlowski v. Bridgestone/Firestone, Inc.*, 670 N.E.2d 78, 83 (Ind. Ct. App. 1996), *trans. denied* (1997). Again, there is no dispute that the post-op x-rays do not show any fractures, hairline or otherwise. Dr. Ireland's position is that they must be there, but we just can't see them, and studies

suggest that in forty percent of the cases the prosthetic device hides them. The majority treats this testimony as if it were dispositive of the issue. I disagree.

[33] By way of example, if the predicate factual issue was the color of a car on a certain date and time, and a photograph taken at the pertinent time depicted the car as red, and subsequently an opposition expert testified that forty percent of the time atmospheric conditions make blue cars appear red on photographs, would anyone have trouble acknowledging that a material issue of fact was in dispute? I suggest that an x-ray showing no hairline fractures and Dr. Ireland's testimony that they are visible in sixty percent of cases at least creates an issue of fact. It is not for us to weigh the evidence but merely to determine the existence of an issue of fact. Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law. *Cramer v. Edwards*, 97 N.E.3d 624, 626 (Ind. Ct. App. 2018). I believe that the Hospital has failed to make that showing here, and therefore I would reverse and remand for trial.